1  ROSS L. HOLLENKAMP - State Bar No. 278138
2  LAW OFFICE OF ROSS L. HOLLENKAMP
3  777 E. Tahquitz Canyon Way, Suite 200-130
   Palm Springs, CA 92262
4  Telephone: (612) 360-7979
   hollenkamp@gmail.com
5
6  Attorney for Plaintiff,
   ASHLEY-ANNE HOBBINS
7

8           UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11  ASHLEY-ANNE HOBBINS,            CASE NO.: 5:24-cv-677

12              Plaintiff,          **COMPLAINT FOR:**

13  v.

14                                  **(1) Violations of Title II of the
                                        Americans with Disabilities Act**
15  DESERT COMMUNITY COLLEGE            **[42 U.S.C. § 12131 *et seq.*];**
    DISTRICT, SARAH FRY, DOROTHY
16  SEITZ, CARLOS MALDONADO,         **(2) Violations of Section 504 of the
    MONICA CAMARGO and DOES 1           Rehabilitation Act of 1973**
17  through 50, inclusive,              **[29 U.S.C. § 794 *et seq.*];**

18              Defendants.          **(3) Violations of the Unruh Civil
                                        Rights Act**
19                                      **[Cal. *Civ. Code* § 51 *et seq.*];**

20                                  **(4) Violations of the California
                                        Disabled Persons Act**
21                                      **[Cal. *Civ. Code* § 54.1 *et seq.*];**

22

23                                  **(5) Intentional Infliction of Emotional
                                        Distress;**
24

25                                  **(6) Breach of Contract; and**

26

27                                  **(7) Breach of Fiduciary Duty;**

28

1
*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

L A W   O F F I C E   O F   R O S S   L .   H O L L E N K A M P

**and**

_____

**DEMAND FOR JURY TRIAL**
_____

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

Plaintiff ASHLEY-ANNE HOBBINS, by and through her undersigned counsel, files this complaint against defendants DESERT COMMUNITY COLLEGE DISTRICT, SARAH FRY, DOROTHY SEITZ, CARLOS MALDONADO, MONICA CAMARGO and DOES 1 through 50, inclusive, and allege as follows:

## THE PARTIES

1.     Plaintiff **ASHLEY-ANNE HOBBINS ("Ms. Hobbins" and/or "plaintiff")** brings this action and is, and at all pertinent times was, a resident of the City of Palm Desert, County of Riverside, California.  Ms. Hobbins is a profoundly deaf/hard-of-hearing individual who has limited communication abilities.  Ms. Hobbins is substantially limited in the major life activities of hearing, speaking and reading, and is an individual with a disability within the meaning of federal and state civil rights laws.

2.     Ms. Hobbins is, and at all pertinent times has been, eligible to attend campuses owned and operated by DCCD.  College of the Desert, located in the County of Riverside, California, is one such campus owned and operated by DCCD.

3.     Defendant **DESERT COMMUNITY COLLEGE DISTRICT ("DCCD")** is, and at all pertinent times was, a public educational entity organized and existing pursuant to the laws of the State of California, California _Education Code_ § 70900, _et seq_.  Therefore, DCCD is a government entity under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131, _et seq_.

4.     Defendant **SARAH FRY ("Ms. Fry")**, an individual, is believed to be, and at all pertinent times was, a resident of the County of Riverside and employee of DCCD.

_Hobbins v. Desert Community College District et al._: Complaint, Jury Trial Demand

5.      Defendant **DOROTHY SEITZ ("Ms. Seitz")**, an individual, is believed to be, and at all pertinent times was, a resident of the County of Riverside and employee of DCCD.

6.      Defendant **CARLOS MALDONADO ("Mr. Maldonado" and/or "Dean Maldonado")**, an individual, is believed to be, and at all pertinent times was, a resident of the County of Riverside and employee of DCCD.

7.      Defendant **MONICA CAMARGO ("Ms. Camargo")**, an individual, is believed to be, and at all pertinent times was, a resident of the County of Riverside and employee of DCCD.

8.      The true names, identities or capacities, whether individual, associate, corporate or otherwise of defendants DOES 1 through 50 inclusive, are unknown to plaintiff Ms. Hobbins who, therefore, sues said defendants by such fictitious names. When the true names, identities or capacities of such fictitiously-designated defendants are ascertained, plaintiff will ask leave of Court to amend this complaint to insert the true names, identities and capacities, together with the proper charging allegations.

9.      Plaintiff is informed and believes, and thereon alleges, that each of the defendants sued herein as a Doe is responsible in some manner for the events and happenings herein referred to, thereby legally causing the injuries and damages to plaintiff as herein alleged.

10.      Plaintiff is informed and believes, and thereon alleges, that at all relevant times, in the County of Riverside, State of California, defendants DCCD, Ms. Fry, Ms. Seitz, Mr. Maldonado, Ms. Camargo and Does 1 through 50 ("**Defendants**") and each of them, knowingly and willfully conspired and agreed among themselves to cause damage to plaintiff by engaging in conduct constituting: (1) violations of Title II of the Americans with Disabilities Act [42 U.S.C. § 12131 et seq.]; (2) violations of Section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794 et seq.]; (3) Violations of the Unruh Civil Rights Act [Cal. Civ. Code § 51 et

seq.]; (4) Violations of the California Disabled Persons Act [Cal. Civ. Code § 54.1 et seq.]; (5) Intentional Infliction of Emotional Distress; (6) Breach of Contract; and (7) Breach of Fiduciary Duty.

11.     Plaintiff is informed and believes, and thereon alleges, that, pursuant to such conspiracy, and in furtherance thereof, Defendants, and each of them, acted in accordance with such conspiracy for the specific purpose, motive and objective and with the effect of causing serious harm to Plaintiff.  Defendants, and each of them, did the acts and things alleged herein pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.  Defendants, and each of them, furthered the conspiracy by cooperating with and/or lending aid and encouragement to and/or ratifying and adopting the acts of each other Defendant.

12.     Moreover, plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, had actual knowledge that DCCD, Ms. Fry, Ms. Seitz, Mr. Maldonado and Ms. Camargo engaged in the conduct as alleged herein, and that such conduct constituted: (1) violations of Title II of the Americans with Disabilities Act [42 U.S.C. § 12131 et seq.]; (2) violations of Section 504 of the Rehabilitation Act of 1973 [29 U.S.C. § 794 et seq.]; (3) Violations of the Unruh Civil Rights Act [Cal. Civ. Code § 51 et seq.]; (4) Violations of the California Disabled Persons Act [Cal. Civ. Code § 54.1 et seq.]; (5) Intentional Infliction of Emotional Distress; (6) Breach of Contract; and (7) Breach of Fiduciary Duty; and nevertheless gave substantial assistance and/or encouragement to DCCD, Ms. Fry, Ms. Seitz, Mr. Maldonado and Ms. Camargo to so act.

13.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein: Defendants and each of them, including defendants named fictitiously, were the ostensible agents, actual agents, servants, employees, joint-venturers, partners, assistants and/or consultants of their co-defendants and, as such, were acting within the course and scope of such agency, service, employment, venture, partnership, assistance and/or consultation at all times mentioned herein;

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

each and every Defendant, as aforesaid when acting as a principal, was negligent in the selection, screening, hiring, periodic evaluation, authorizing, and/or retaining of each and every other Defendant as its ostensible agent, actual agent, servant, employee, joint-venturer, partner, assistant and/or consultant to care for plaintiff and other patients; and each and every Defendant ratified the conduct of the other Defendants.

14.     The liability of the Defendants herein is alleged based upon many acts and/or omissions, including but not limited to their own malfeasance, and not solely based upon theories of alter ego or *respondeat superior*.

15.     DCCD receives federal financial assistance in many forms, including, but not limited to, direct grants of assistance as well as student financial aid, and is therefore required to comply with Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

16.     As a condition of receiving federal funds from the Department of Education, DCCD annually signs a Certificate of Compliance certifying that it is in compliance with Section 504 of the Rehabilitation Act.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for plaintiff's claims arising under federal law, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for plaintiff's claims arising under state law.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants do business in this district, the acts constituting violations of the ADA and Section 504 (among other causes of action) occurred in this district, and Ms. Hobbins resides in this district.

///

///

///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

LAW OFFICE OF ROSS L. HOLLENKAMP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF ROSS L. HOLLENKAMP

## STATEMENT OF FACTS

19.    Ashley-Anne Hobbins (hereinafter "Ms. Hobbins" and/or "Plaintiff") first enrolled at the College of the Desert (hereinafter "COD") in **August 2014**, to earn her Associate of Science in Health Science Degree with her goal of enrolling in the Registered Nursing program.  In **Spring 2017**, Ms. Hobbins completed the Certified Nursing Assistant Program at COD and received the Edeltraud McCarthy Nursing Scholarship.  She also received substantial Nursing Program Scholarships from Palm Desert Rotary and other organizations in support of her nursing career studies and goals.

20.    Since her diagnosis in Kindergarten, Ms. Hobbins has been a member of the **Deaf and Hard of Hearing ("D/HH")** community, which qualifies as a "disability" under various applicable statutes enacted to protect disabled persons.  Thus, under both federal and state law (see, e.g., the Americans With Disabilities Act [42 U.S.C. § 12101 *et seq.*, the "ADA"] and Section 504 of The Rehabilitation Act of 1973 [29 U.S.C. § 701 *et seq.*, "Section 504" and/or "The Rehabilitation Act"]), she is entitled to specific accommodations and has indeed been granted hearing-related accommodations, under applicable law, throughout both her K-12 and post-secondary education.

21.    Despite her disability, Ms. Hobbins excelled as both a student and leader at La Quinta High School ("LQHS") as a member of the Medical Health Academy, and in Wisconsin at Waunakee Community High School.  At LQHS, she was one of 6 students who won a Nursing Scholarship.  She also founded, chartered, and was President of the LQHS Red Cross Club.

22.    In 2014 and 2015, Ms. Hobbins was honored to be chosen as a United States Deaf Swimming Team Member successfully representing her country, setting records, and earning podium medal accolades at the International Short Course Championships at the Rochester Institute of Technology ("RIT") in Rochester New York.  The RIT is a cutting-edge higher education institution, affiliated with Gallaudet

6

University, specializing in technology and innovation in the realm of the Deaf and Hard of Hearing Community and the United States Deaf Sports Federation, and supported by the International Olympic Committee.  Ms. Hobbins was also a designated USA Swimming National Convention Delegate for Jacksonville, FL annual conferences and assemblies.  She was also a USA Deaf Swimming Team USA Ambassador, helping organize and set up the successful San Antonio 2015 Deaflympics in Texas, with outreach to and the written support of Governor Rick Perry and San Antonio Mayor Castro.

23.     Finally, Ms. Hobbins is a proud and distinguished Rotarian.  In 2015, Ms. Hobbins chartered COD's very own "Rotaract Club", a Palm Desert Rotary-supported collegiate Rotary club that was very active at the COD under her leadership and closely supported by **Aurora Wilson**, a former COD Trustee.  Ms. Hobbins also organized and worked with COD Student Life Dean (and defendant) **Carlos Maldonado** on various club development issues (including the Rotaract Club, among others), and Athletic Director **Gary Plunkett** on a Collegiate USA Triathlon COD Tritons club team project.  Ms. Hobbins is also very involved in various Veteran and National bloodline organizations.  For the last three (3) years, she has been acting Secretary for the National Freedom and Liberty Tree Project ("NFALTP"), a 501c3 non-profit that organizes Veterans events around the country.

**Pre-Nursing Education:**

24.     In Fall 2017, Ms. Hobbins participated in a requisite course at COD called, "Success in Nursing", co-instructed by then-instructor defendant **Sarah Fry, MSN, RN, PHN** ("Ms. Fry") and Nursing Counselor and Instructor **Ana Stockwell, Ph.D., Psy.** ("Dr. Stockwell").  At that time, Ms. Hobbins was yelled at and publicly humiliated (in her face, inches away) by Ms. Fry for arriving to class minutes late due to exercising her requested (and granted) reasonable accommodations for being deaf/hard-of-hearing (i.e., extended test-taking time and a distraction-reduced testing environment) even though Ms. Hobbins had *already been* granted these testing

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

LAW OFFICE OF ROSS L. HOLLENKAMP

accommodations by COD's Disabled Students Programs and Services ("DSPS") office. Dr. Stockwell was not present during this incident. Ms. Hobbins had never been so publicly mistreated, humiliated in her ENTIRE life—whether in front of her "hearing" peers or anyone—this type of public ridicule is the greatest fear for members of the D/HH Community. This incident amounts to instructor harassment, bullying, intimidation, and misconduct.

25.     Despite receiving such unfair treatment as a disabled student, in May 2019, Ms. Hobbins successfully became a COD Alumna by earning her Associate of Science in Health Science diploma.

26.     Thereafter, in Fall 2019, to maximize her academic credentials and career planning objectives, Ms. Hobbins transferred to and enrolled at California State University-San Bernadino ("CSUSB"). Ms. Hobbins successfully earned her Bachelor of Science ("BS") in Public Health Education from CSUSB in December 2022 and her paid internship took place in Eisenhower Health Patient Financial Services/Business offices; her Eisenhower Health internship recommendation came from the President of the Eisenhower Health Foundation, **Michael Landes**.

27.     Notably, in March of 2020 (and later again, in Spring 2022), Dr. Stockwell (on behalf of the COD Nursing Administration) requested that Ms. Hobbins—as a COD Alumna and currently Registered Nursing Student—publicly speak in support of COD Nursing Programs to prospective pre-nursing students in the "Success in Nursing" classroom, the very same course that Ms. Hobbins completed in Fall 2017.

**Nursing Program:**

28.     In December 2019, Ms. Hobbins was accepted into the COD Registered Nursing (RN) Program (hereinafter "Nursing Program" and/or "RN Program"). She started and successfully completed "N1" (the first semester of the RN Program) during Spring 2020 (note: in March 2020, N1 was abruptly moved to on-line learning due to the 2020 COVID-19 Pandemic).

LAW OFFICE OF ROSS L. HOLLENKAMP

29.     Subsequently, Semester 2 ("N2") was scheduled to start in the Fall of 2020; however, unfortunately, N2 was impacted by the 2020 COVID-19 Pandemic, moving the program abruptly to on-line learning.  The COD nursing program in general was suspended from August 2020 through December 2020 altogether; however, a section of online learning for "N3" (namely, the "N3B co-requisite to N3A") was extended to her entire N2 cohort and Ms. Hobbins successfully completed it.

30.     Continuing with N2 in the semester of Spring 2021, her Clinical Instructor, **Abigail ("Abby") Bravo, MSN, RN** constantly harassed and humiliated Ms. Hobbins, in front of her peers, other nurses and patients, at the JFK Hospital clinical site, all semester long (end of January-May 2021).  Ms. Bravo would use intimidation, uninvited threatening behaviors, reprisals, and other abusive tactics; all of this amounted to bullying in front of her peers.  <u>For Ms. Hobbins, this was now **the 2nd incident of harassment** inflicted upon her by a COD instructor—this time lasting the entire duration of the N2 semester (see above regarding harassment suffered by Ms. Hobbins in 2017, the 1st incident, at the hands of Ms. Fry).</u>

31.     Later, still in the Spring 2021, Ms. Hobbins had frequent discussions with **Leslie Quinones ("Ms. Quinones")**, Director of COD's Disabled Students Programs & Services ("DSPS") office about this clinical instructor (Ms. Bravo) and the many instances of harassment that occurred and which were witnessed by many; remarkably, in or about January/February 2022, <u>Ms. Quinones even **admitted** to Ms. Hobbins that she (Ms. Quinones) should have filed a harassment complaint at the time to protect Ms. Hobbins under those circumstances.</u>  Ms. Hobbins also reported this harassment to defendant **Monica Camargo, MSN-ED, RN ("Ms. Camargo")**, the N2 co-Theory Instructor at the time (and current Assistant Dean of Nursing and Department Chair); Ms. Camargo should have reported and documented the harassment as a legally mandated reporter, but she failed to do so.

///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

LAW OFFICE OF ROSS L. HOLLENKAMP

32.     Ms. Hobbins proceeded to successfully complete N2 on May 17, 2021 (along with her original cohort of classmates), despite the above-referenced abuse and harassment inflicted by Ms. Bravo.

33.     In May 2021, Carol Scobie retired, and Ms. Fry was hired into the position to replace her as Nursing Program Director.

34.     From May 17 to July 22, 2021, Ms. Hobbins was enrolled into her "N3" Semester (to begin in Fall 2021) and proceeded to begin the "onboarding" procedure, that is, the uploading of various required documents on the "E-Value IT" system.

35.     BUT, on July 22, 2021, COD's Director of Nursing, Ms. Fry *inexplicably dropped Ms. Hobbins from the Nursing Program*, apparently due to Ms. Fry's and/or the Nursing Department's "onboarding" errors and omissions.  Ms. Hobbins was dropped with directed indifference, without any recourse, even though Ms. Hobbins had the proof then and defended herself that she did everything right and followed onboarding as it was communicated.  During Ms. Hobbins' attempts to resolve this problem, she was mocked by Ms. Fry.  It bears emphasis that this is the same Ms. Fry who humiliated Ms. Hobbins in the "Success in Nursing" course in Fall 2017 for needing additional test-taking time (as a reasonable accommodation that had been approved/granted by COD's DSPS office).

36.     All post-secondary programs, including vocational programs, that receive federal financial assistance—such as COD—are prohibited by Section 504 of the Rehabilitation Act ("Section 504") from discriminating on the basis of disability against students with disabilities in recruitment, admissions, and programs and services.  Section 504 provides that no qualified individual with a disability shall be excluded from participation in, or denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. The ADA has expanded this requirement to all post-secondary educational institutions, regardless of whether they receive federal financial assistance.  Thus, post-secondary programs such as COD's Nursing Program must ensure that all instructors are

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

properly trained to interact with the protected classes of disabled individuals whom they are teaching.  This means that instruction, syllabuses, tables of contents, exams, quizzes, clinical and coursework explanations are precise, up to date and accurate, same for all associated department and off site staff, locations, necessary contacts, identified key personnel specified and listed, a posted and communicated-in-writing remedial help schedule be posted and interfaced with the protected class individual to ensure an effective and safe learning environment as appropriate and needed under legally mandated accommodations.  This especially means providing instructors who are properly certified and trained in all applicable disability-related laws (such as the ADA and Section 504 of the Rehabilitation Act), who understand the protected individuals with learning methodologies, providing effective academic communication, and the associated course material with explanations that is effectively communicated with all students and in particular, Ms. Hobbins.

37.    "The Administrative Drop" from Ms. Hobbins' 1ˢᵗ N3 cohort was due to Ms. Fry's error (and her own office's incompetence), and then compounded by her refusal to be honest and acknowledge and correct this administrative error, with directed indifference against Ms. Hobbins in regard to administrative and ADA policies and procedures, and necessary integrated communication plan.  At the time of the drop in July 2021, Ms. Hobbins protested vehemently to Ms. Fry on her administrative errors, miscommunication, and intentional drop from the Nursing Program.  The issues of the Nursing Director, Fry's lack of candor and lack of an effective ADA communication plan was fully detailed (in Ms. Hobbins' General Grievance/Appeal in Summer and Fall 2022) and expounded upon in Ms. Hobbins' General Grievance appeal (note: Ms. Hobbins proved all of the above in the General Grievance appeal process, to the satisfaction of Mr. Maldonado to win her appeal). This forced Ms. Hobbins to sit out **the entire Fall 2021 semester**, while her original cohort of classmates went ahead without her and completed N3A and beyond.  This delay caused Ms. Hobbins severe emotional distress, including anxiety and

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

embarrassment for being "left behind" by her original cohort and the perception—wrongfully and maliciously perpetuated by Ms. Fry—that this was somehow Ms. Hobbins' fault.

38.     Given Ms. Fry's refusal to correct her and the administration's error in dropping her entirely from the Nursing Program, Ms. Hobbins was forced to use her single allotted "appeal for reinstatement" in order to be readmitted into the N3A Spring Semester 2022 Registered Nursing Program (note: as set forth in the Nursing Program's Student Handbook, all nursing students are granted only one (1) opportunity "to appeal" to be reinstated into the Nursing Program).  COD's Reinstatement Process and Policy is described as a procedural matter and a formality. The Reinstatement Process involves an "Exit Interview" and Reinstatement "application" with the Nursing Counselor.  The Nursing Department and Faculty consider and review the nursing students' Reinstatement "applications" at the end of the semester, and grant Reinstatement based on available space.  The waiting period for the granting of Reinstatement took several months and finally was resolved on December 15, 2021, when **Irene Morales**, Admissions and Records Specialist informed Ms. Hobbins of her re-admission into N3A, contingent on completing the "remediation assignment" by the first day of the semester.

39.     Accordingly, in Spring 2022, Ms. Hobbins was finally re-enrolled back into the Nursing Program and began N3A with a new cohort (her 2nd cohort).  Her assigned clinical site was Eisenhower Health with Clinical Instructor **Melody Stanowski** ("Ms. Stanowski") in Rancho Mirage, only a few miles away from Ms. Hobbins' home and the COD campus.  Although Ms. Hobbins passed her Spring N3A Final Clinical Evaluation with high praise from her instructor, Ms. Stanowski (indeed: Ms. Hobbins received a final grade of 94%, "Excellent" and "MET" in her Clinical Evaluation), unfortunately, she only scored 74% on the "Theory" portion of N3A and thus was obligated to re-take N3A.

///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

LAW OFFICE OF ROSS L. HOLLENKAMP

40.     This would require Ms. Hobbins to exercise her "one (1) opportunity to be reinstated" in the Nursing Program, but Ms. Hobbins had already used her one opportunity to reinstate!  Actually, NO!  It was effectively stolen from her with malice by Ms. Fry.

41.     A determined Ms. Hobbins knew she had already been wronged and harmed personally by the administrative incompetence (if not outright maliciousness) of her Nursing Program Director, Ms. Fry, in incorrectly dropping her from the Nursing Program back on July 22, 2021.  Ms. Hobbins thus contacted the offices of the E-Value Integrated Information Systems that COD was using for the Nursing Program.  The E-Value IT Support sent the digital communication record to COD, who forwarded it to Ms. Hobbins, regarding her N3A onboarding communications and postings.  This was a complete and digital readout of all E-Value-based communications between the COD Nursing Program and Ms. Hobbins.  At the same time, Ms. Hobbins began the "General Grievance" process as outlined in the College Catalog in an attempt to hold Ms. Fry accountable for dropping Ms. Hobbins from her N3A cohort for no legitimate reason, causing severe harm to her academic and career timeline, as well as inflicting an incredible amount of emotional distress and mental suffering.

42.     In her General Grievance process, Ms. Hobbins did not mince words; she described the inexplicable, but undeniable, *personal animus* that Ms. Fry held toward Ms. Hobbins, as evidenced by her callous indifference to Ms. Hobbins' plight, her violating the rights of a protected class member, Ms. Fry's lack of an legally compliant communication plan with accompanying appropriate communication on required onboarding materials and deadlines; in fact, Ms. Hobbins is informed and believes that Ms. Fry set a trap to *intentionally drop* Ms. Hobbins, without adequate recourse and actively listening regarding the entire matter.  What was revealed by the General Grievance process was evidence of Ms. Fry's cynical arrogance and breaches of fiduciary duty, which also amounted to administrative malpractice and harm

13

LAW OFFICE OF ROSS L. HOLLENKAMP

1    inflicted on Ms. Hobbins.

2         43.    Additionally, in August 2021, Ms. Hobbins contacted **Aurora Wilson**,

3    then-COD Trustee ("Ms. Wilson"), and **Dr. Courtney Doussett**, the Interim Dean of

4    Health Sciences and Education ("Dr. Doussett"), to see if they could help resolve and

5    rectify the situation before it was too late for the Fall 2021 onboarding process that

6    was under review and in planning.  As documented in emails, both Ms. Wilson and Dr.

7    Doussett responded in the negative, as they were both apparently "vetoed" by Ms. Fry

8    in their attempts to speak with her regarding Ms. Hobbins.

9         44.    The E-Value time-stamped printouts proved and incriminated Ms. Fry

10   directly by demonstrating her lack of candor regarding her fiduciary duties and the

11   onboarding events as well as the lack of any communication plan afforded for Ms.

12   Hobbins under applicable law and DSPS's own previously approved Accommodations

13   for Ms. Hobbins.  The appeal process during Summer/Fall 2022 revealed this and

14   proved Ms. Hobbins' July 2021 statements were accurate and that Ms. Fry exposed

15   herself and exhibited her administrative lack candor and ADA/Section 504 violations

16   across the board.

17        45.    Remarkably, during the Grievance Process, Ms. Fry even incriminated

18   herself.  Ms. Fry provided a PDF with *her own* proffered timeline/narrative pertaining

19   to her communications and administrative coordination as Nursing Department

20   Director for the timeframe around the Summer of 2021.  However, the dates and

21   communications on the E-Value IT Department printouts that Ms. Hobbins had

22   obtained <u>contradicted</u> what Ms. Fry alleged to be true in her own PDF narrative of

23   events, both of which sets of documents were provided to Mr. Maldonado during the

24   "General Grievance" "hearing".  Thus, thankfully, the TRUTH came out, proving that:

25   (a) Ms. Hobbins was correct, founded in her claims, and acting in good faith; and (b)

26   in contract, Ms. Fry had lied during the "General Grievance" process in order to cover

27   up her own incompetence and errors (at best), if not outright malfeasance by

28   *intentionally dropping* a protected-class student from her original cohort (at worst).

LAW OFFICE OF ROSS L. HOLLENKAMP

14

Catching Ms. Fry in her lie indeed became the lynchpin for Ms. Hobbins winning her General Grievance and thus being re-granted her original, sole "right to appeal for reinstatement" that was effectively stolen from her in the first place and the decision on Ms. Hobbins' "General Grievance" was issued by Mr. Maldonado on November 3, 2023, via email.

46.     In fear of being retaliated against by Ms. Fry and/or other COD faculty or administrators as a result of bringing the aforesaid "General Grievance" claim against Ms. Fry (and thereby holding Ms. Fry accountable for her mistake in dropping Ms. Hobbins from the Nursing Program in the Summer of 2021), plaintiff Ms. Hobbins repeatedly requested—in or about November 2022, December 2022 and against in April 2023—that Dean Maldonado issue a letter to all faculty and administrators of COD's Nursing Program confirming that Ms. Hobbins had prevailed in her appeal and that she must not be retaliated against as a result of holding Ms. Fry accountable for her mistake.  Dean Maldonado granted this request and confirmed with Ms. Hobbins that he would indeed write and send this letter out; inexplicably, Dean Maldonado failed to do so and, unfortunately, Defendants proceeded to retaliate against Ms. Hobbins—exactly as she had feared!

**Ms. Hobbins' Spring 2023 Semester ("N3A"):**

47.     As of January 28, 2023 (the first day of the semester), the COD had four (4) Nursing Program "assigned" N3A clinical groups.  One clinical group is 20 miles away from COD in Palm Springs at Desert Regional Medical Center ("DRMC"), and the other three (3) cohorts were at Eisenhower Health, only 2 miles away from COD (note: only months earlier, on May 17, 2022, Ms. Hobbins had passed her N3A Final Clinical Evaluation with Clinical Instructor, Ms. Stanowski, with a stellar 94%, clinical scores and with exceptional instructor, nurse, and patient reviews).

///

///

///

48.     Ms. Fry assigned Ms. Hobbins to the DRMC N3 clinical group and to a first-year (2nd semester of instructor experience) COD clinical instructor, defendant **Dorothy Seitz, BSN, RN ("Ms. Seitz")**, who announced to Ms. Hobbins' clinical group on February 2, 2023, that her last semester's students "say that I am mean".

49.     Note: on February 3, 2023, Ms. Hobbins emailed Ms. Seitz a copy of the Jan. 10, 2023 letter that Ms. Hobbins received from COD's Disabled Students Programs and Services ("DSPS"), confirming the accommodations that it had authorized that semester for Ms. Hobbins to receive, pursuant to the ADA and Section 504, as a D/HH student, the receipt of which letter Ms. Seitz confirmed via email that same day (note: Ms. Hobbins also emailed this same letter Ms. Hobbins to Ms. Camargo on Jan. 27, 2023]).  Thus, both Ms. Seitz and Ms. Camargo were formally notified from the beginning of both the nature of Ms. Hobbins' disability and her right for corresponding accommodations through the Spring 2023 semester.

50.     Furthermore, on February 23, 2023, from the DRMC site, Ms. Hobbins was given a ride home from DRMC to Ms. Hobbins' Palm Desert residence, but with a side trip to Eisenhower Health to pick up a textbook first!  Ms. Seitz insisted on giving her a ride home in her Tesla, even though Ms. Hobbins explained that she "did not feel comfortable" (as such after-hours time together is not/was not encouraged professionally between students and instructors).  Ms. Hobbins believes this was an attempt by Ms. Seitz to intimidate and/or harass Ms. Hobbins further.  This was part of the hostile academic and professional environment; this is part of a negative foundation that the COD Nursing Program created for Ms. Hobbins as a disabled student.

51.     Unfortunately, abusive episodes for the D/HH community are all too real. Here, the pattern of non-communication, miscommunication, personally abusive lack of communication, abusive learning and public environment, erroneous and intentional erroneous verbal communication started on February 2, 2023 ("day 1") and continued thereafter, in the DRMC and COD setting with clinical instructor Ms. Seitz

for Ms. Hobbins, *a D/HH student who has the trained and heightened sense regarding everything concerning communication and personal organization around the academic and professional settings*.  A deliberate *lack of communication*, or a directed *miscommunication* (whether oral or written) constitutes abuse for members of the D/HH Community.

52.  Indeed, things got so bad that Ms. Hobbins filed a harassment complaint on **March 29, 2023**, to protect herself after consulting with Dr. Stockwell and Ms. Quinones.  They supported her concerns and her move to file the complaint, while warning that the filing of such a harassment claim could result in retaliation against Ms. Hobbins!  Not surprisingly, and as Dr. Stockwell and Ms. Quinones predicted, Ms. Hobbins thereafter faced an even more abusive educational environment with accelerated reprisals in the second half of her N3A semester.  Below are further examples of COD's violations of Ms. Hobbins' legal rights, including but not limited to failures to provide legally required accommodations for Ms. Hobbins as protected class member of the D/HH community.

53.  During the entirety of Ms. Hobbins' N3 Semester in Spring 2023 with Ms. Seitz, Ms. Seitz refused to reasonably accommodate Ms. Hobbins as a D/HH student, in violation of (among other statutes) Section 504 and Title II of the ADA, by failing to provide reasonable and adequate written communication to Ms. Hobbins during the course of the semester.  In fact, there was a *pervasive and intentional* lack of communication at all levels of the Nursing Program vis-à-vis Ms. Hobbins, and an intentional lack of any formal designed plan by the instructor (Ms. Seitz) to conduct regular office hours to remedy the situation.  This lack of adequate written communication for Ms. Hobbins, combined with Ms. Seitz's unfounded accusations against Ms. Hobbins for alleged "safety violations" (as discussed more below), on top of Ms. Seitz self-described "mean instructor" factor became more and more pronounced during the entire N3 semester for Ms. Hobbins.  This resulted in a sense of terror for Ms. Hobbins, as the harassment and abusive situation continued to build.

17

LAW OFFICE OF ROSS L. HOLLENKAMP

54.     In addition to failing to reasonably accommodate Ms. Hobbins' disability as a D/HH student, Ms. Seitz also repeatedly discriminated against and harassed Ms. Hobbins for her disability, in violation of both the ADA and Section 504 (among other statutes).  One good example of direct intimidation and related harassment would be in approximately the middle of March 2023, when Ms. Seitz complained to Ms. Hobbins' face that she (Ms. Seitz) disliked "having to communicate more" with Ms. Hobbins and that she was "not used to that" (i.e., Ms. Hobbins' request for more *clear, written* communication), which made Ms. Hobbins feel that she was being harassed and discriminated against for being deaf/hard-of-hearing ("D/HH"), as well as being made by Ms. Seitz to feel guilty as a disabled student for somehow "imposing" additional duties and instructor-student communication requirements on Ms. Seitz.

55.     Another good example was Ms. Seitz' fraudulent and deliberate misrepresentations in her written evaluations of Ms. Hobbins at the DRMC clinical site (where there were staff nurses whom Ms. Hobbins shadowed and with whom she was conducting her duties as a student nurse; all of these nurses who were shadowed by Ms. Hobbins had nothing but praises and recommendations for her performance; in fact, several even offered letters of recommendation for her as a future RN!).

56.     One of the worst primary examples of this bad faith and fraud demonstrated by Ms. Seitz (in her written evaluation of Ms. Hobbins) was her clinical site "reporting" and "observation" during a "medication pass" that Ms. Hobbins completed (note: all medication passes at DRMC must be completed under the direct supervision of the clinical instructor) during her clinical shift on 4 Sinatra, the morning of **May 11, 2023**.  On that day, Ms. Hobbins was shadowing "Dani", an RN. On the floor, Ms. Seitz proceeded to falsely claim, (and later proceeded to fraudulently report, in her own writing), that Ms. Hobbins' committed a "Safety Violation" on that day.  In fact, this did <u>not</u> occur and there was no "safety violation" made by Ms. Hobbins.  As per protocol, when administering medications with a clinical instructor, the nursing student is to review their medication(s) prior to

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

LAW OFFICE OF ROSS L. HOLLENKAMP

LAW OFFICE OF ROSS L. HOLLENKAMP

administration.  Ms. Hobbins stated that she would be administering Protonix by intravenous push (IVP), per protocol (i.e., rate administered), and that it was compatible with Lactated Ringers (LR's), an intravenous (IV) fluid.  However, Ms. Seitz refused to acknowledge this statement.  Furthermore, apparently vexed by Ms. Hobbins' statement regarding the medication compatibility, Ms. Seitz instructed Ms. Hobbins to call the DRMC Pharmacy (on 4 Sinatra, at approximately 9:45 am) in the Nursing Station.  The on-call male pharmacist verified and confirmed the compatibility, and that Ms. Hobbins was indeed correct with the compatibility of Protonix and LR's.  However, even with the clarification of the medication compatibility before administration, Ms. Seitz proceeded to write a "fraudulent narrative and report" regarding this situation and falsely labeled the resolved situation as a "Safety Violation."

57.    To be clear: Ms. Hobbins fully resolved the question of "medication compatibility" and reported to Ms. Seitz that she made the call to the pharmacy as demanded by Ms. Seitz, while on the floor.  The worst injustice of this entire situation was that: (1) Ms. Seitz fraudulently reported the situation as a "Safety Violation" in her Final Clinical Evaluation on **May 19, 2023**, as the "failing" safety violation; and (2) unbeknownst to Ms. Hobbins, she was *unaware and shocked to discover* upon receiving her "Final Clinical Evaluation" for N3A, that Ms. Seitz wrote a "fraudulent narrative and report" pertaining to the May 11, 2023 clinical medication pass.

58.    The sense of terror climbed for this protected-class individual.  Remember, only a month before, Ms. Hobbins won her General Grievance appeal against the Director of Nursing, Ms. Fry, who lacked candor and committed administrative malpractice, resulting in a significant delay of Ms. Hobbins' life, academics, and career (please also recall that Ms. Fry is the same instructor who humiliated Ms. Hobbins in the "Success in Nursing" course, in front of the whole class).

///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

59.     Additionally, Ms. Hobbins has received six-figure job opportunities in the $150,000/year starting range, as RNs are in very high demand today, across both California and the entire United States.  Ms. Hobbins mentioned this repeatedly to Ms. Fry and Mr. Maldonado, as late as the April 11, 2023, ZOOM meeting (the recording of which they denied, despite Ms. Hobbins' request).

60.     Things became so unbearable from February 2nd to mid-March, that on **March 29, 2023**, Ms. Hobbins filed a formal harassment complaint against Ms. Seitz, emailing the harassment complaint to the COD Administration, after having had meetings with Dr. Stockwell and Ms. Quinones, on March 27 and March 29, 2023, who both supported and shared Ms. Hobbins' sense of urgency to properly report the abusive situation and be moved into another clinical group (Eisenhower Health). Attached hereto as **Exhibit "1"** is a true and correct copy of Ms. Hobbins' March 29, 2023 "Discrimination and Harassment Complaint Form" (and its attached "Harassment Report/Demand for Immediate Clinical Instructor Change, Site Change") against Ms. Seitz.

61.     About 10 days later, the Department of Rehabilitation ("DOR"), on official email, wrote a letter of support for Ms. Hobbins to the COD, supporting her report of harassment.  Within days, Ms. Hobbins also directly contacted defendant **Carlos Maldonado**, COD's Interim Associate Dean of Student Services ("Mr. Maldonado and/or "Dean Maldonado"), to explain the situation and request to be moved out of the harassing clinical instructor's (Ms. Seitz's) clinical group (at DRMC) to one of the three other clinical groups (at Eisenhower Health).

62.     Ms. Hobbins met with Dean Maldonado on Zoom on **April 10, 2023**, to discuss her urgent request for an immediate clinical site transfer to Eisenhower Health.  Dean Maldonado actually concurred and—in recognizing the urgency of the matter—suggested a meeting the very next day, on **April 11, 2023**, via Zoom, to include Ms. Fry!  The next day, Dean Maldonado and Ms. Fry opened the Zoom meeting by stating that the Zoom meeting "would not be, will not be recorded"—

20

LAW OFFICE OF ROSS L. HOLLENKAMP

which, in itself, is a violation of Ms. Hobbins' legal right to reasonable accommodations as a D/HH person under the ADA and Section 504.  Ms. Hobbins' father, Ben Hobbins, announced himself as a "Meeting Observer" and remained mute for the entire 1.5-hour Zoom meeting.  And here (as with other times in the Nursing Program by her own hand then and now), <u>it was quickly made known during this hearing that Ms. Fry was going to **deny** the request to transfer her to one of the three other Eisenhower clinical groups, even though the complaint was lodged according to COD procedures, with peer support, and that the solution was a "reasonable solution".</u>

63.     During the **<u>April 11, 2023</u>** Zoom meeting between Ms. Hobbins, Dean Maldonado, and Ms. Fry, to discuss Ms. Hobbins' request for an immediate clinical site transfer to Eisenhower Health, Ms. Hobbins directed the conversation and her legitimate concerns to the two (2) false and fraudulent, narrative-based Performance Improvement Plan(s) (PIP) assigned to Ms. Hobbins within five (5) days of each PIP.  Ms. Hobbins was distressed and emotional, acutely concerned that the Ms. Seitz-specified "Safety Concerns" in the clinical portion of the PIP were premeditated in nature, mirroring the harassment she was experiencing at multiple levels.  Ms. Hobbins pointed out that the consequences of having more than two (2) PIPs would be an immediate failure of the N3A course.  But, contradicting the "Nursing Program Student Handbook" (NPHS) on PIPs, Ms. Fry stated that the PIPs "are not punitive" and that "there is no maximum number of PIPs a nursing student can receive with regard to and concerning 'safety' thus, failing the student from the semester".  A PIP is a learning tool used for improvement.  Ms. Hobbins noticed a deliberate and callous change made to the NPSH in the "Performance Improvement Process" section, which was revised in July 2022, notably during the time of Ms. Hobbins' General Grievance Appeal.  When Ms. Hobbins noticed these changes made, she felt that she was being "set up" to fail, especially being a protected class under applicable disability law.

///

///

64.     Ms. Fry, with Dean Maldonado's complicity and approval, failed to make the obvious reasonable change to another clinical group.  When Mr. Maldonado said he "checked into one of the other Eisenhower Health clinical groups, and would check the others," he was cut off by Ms. Fry who simply said, "no, there would be no changes made."  Most of the meeting was an appalling display of administrative malfeasance, incompetence and directed indifference to the severity of the matter and urgency.  Ms. Hobbins. was not safe and remained neglected by the RN Program. Even though Ms. Hobbins suggested a reasonable solution, a valid and prompt solution to be transferred out of harm's way, was not issued.  Instead, Ms. Hobbins was forced to finish the last 8 weeks of the semester in her DRMC clinical group with the harassing and vindictive clinical instructor, Ms. Seitz.

65.     Given the refusal by Ms. Fry and Dean Maldonado to transfer Ms. Hobbins to another cohort, she was left without any further recourse and she was forced to suffer in the most abusive environment for a protected class or any other; the N3A semester continued, as did the harassment under the same harassing instructor Seitz.  Ms. Seitz was informed of the harassment complaint against her and thereafter even complained about this to Ms. Hobbins (albeit not directly, to further intimidate, belittle, and denigrate Ms. Hobbins) of having to "communicate in writing" and that she was "not used to it" (i.e., having to communicate via email with Ms. Hobbins).

66.     Ms. Hobbins' fear of further reprisals during the N3A semester was sadly confirmed by Ms. Fry and Ms. Seitz on **May 19, 2023**, when Ms. Hobbins received her Final Clinical Evaluation.  Ms. Hobbins attended her Final Clinical Evaluation in a semi-private conference room—with Ms. Camargo and Ms. Seitz present, unbeknownst to Ms. Hobbins.

67.     The Final Clinical Evaluation was handed to Ms. Hobbins for her review, in a semi-private conference room.  Ms. Hobbins passed Theory with a 78% and received an 85.25% in Clinical (skills evaluations, applied methodologies, assignments, etc.).  She should have been passed, as both scores exceeded the passing

threshold of 75%!  During the meeting, Ms. Seitz remained mute the entire time in an act of final defiance, only speaking when Ms. Hobbins asked if she would reconsider the Final Clinical Evaluation and, in response, only stating "that is the Final Evaluation," and nothing else.  Ms. Camargo, grasping for administrative cover, mentioned the available Grade Grievance process and Ms. Hobbins stated she would pursue the grade grievance.  As a final-straw attempt at humiliation, Ms. Camargo attempted to coerce Ms. Hobbins to sign the errant and reprisal-based Final Seitz Clinical Evaluation.  Ms. Hobbins signed and wrote underneath: "I do not agree with this evaluation made on 5/19/2023".

68.     Attached hereto as **Exhibit "2"** is a true and correct copy of Ms. Seitz's "Final Clinical Evaluation" dated May 19, 2023 and signed by Ms. Hobbins that same date.

69.     On **May 23, 2023**, Ms. Hobbins sent an email to Dr. Stockwell with the subject line: "Meeting ASAP & Grade Grievance Filing N3A", requesting a meeting with her regarding her scores, and informing Dr. Stockwell that Ms. Seitz's Final Clinical Evaluation represented a clear and malicious retaliation against Ms. Hobbins, a disabled student, in response to Ms. Hobbins filing her March 29, 2023 discrimination and harassment complaint against Ms. Seitz.

70.     Ms. Hobbins met with **Cynthia ("Cindy") Alvarez**, Student Resolutions Manager ("Ms. Alvarez"), in her office (ADMIN-1M) on **May 24, 2023**, to clarify the Grade Grievance process (note: Ms. Alvarez is also part of the canned COD "CARE Team").  Ms. Hobbins planned and discussed with Ms. Alvarez her disgust with the harassment situation with her clinical instructor, Ms. Seitz, the reprisals and retaliation, and the subsequent failing grade reprisal.  Additionally, for some reason, Ms. Alvarez decided to make a copy of Ms. Hobbins' N3A Final Clinical Evaluation, without any explanation of why.  Ms. Hobbins felt that this was inappropriate in her role as the Student Resolutions Manager.  This document (the Final Clinical Evaluation) was part of Ms. Hobbins' personal records that should be kept

confidential, unless submitted through the Grade Grievance process first.

71.  On **May 26, 2023**, Ms. Hobbins submitted two (2) mandatory course and facility surveys to COD and to the Nursing Program Assistant via SurveyMonkey. These surveys are used by the Nursing Administration, Department and Director and Clinical and Theory instructors to better assess and deliver academic and clinical outcomes for future student nurses enrolled in the RN Program.  These surveys were *very detailed* and contained the timeline of events of harassment and abuse suffered by Ms. Hobbins during her participation in the entire RN Program and especially in her Spring 2023 N3A semester.

72.  **On June 16, 2023**, Ms. Hobbins emailed Ms. Seitz (and copied Ms. Camargo), confirming that she would be filing a Grade Grievance according to the COD's internal policy, and inquiring about setting up a Level 1 Grade Grievance ("GG") meeting for the next week.  At this point, the GG process should have been scheduled to be concluded by the end of Summer, as the process was only supposed to take approximately 2 months, per the COD's own written policies for the GG process, as set forth in the Student Catalog and Desert Community College District's Administrative Procedure 5530, entitled "Student Rights and Grievances".

73.  On **June 20, 2023**, Ms. Seitz emailed Ms. Hobbins (with copy to Ms. Camargo), informing Ms. Hobbins that she (Ms. Seitz) was "currently off COD contract", and could thus not engage in the grade grievance process until **August 28, 2023**.

74.  After all of Summer 2023 passed and finally, on **September 14, 2023**—a full two weeks after she said she would—Ms. Seitz emailed Ms. Hobbins (with copy to Ms. Camargo) to "set up" the Level 1 GG meeting.  Ms. Hobbins is informed and believes, and on that basis alleges, that this unreasonably delay in scheduling said meeting is a further act of harassment and retaliation on the part of Ms. Seitz and Ms. Camargo, as well as a bad faith strategy by the entire Nursing Program/COD administration to delay Ms. Hobbins' ability to *timely* file a lawsuit against COD

24

LAW OFFICE OF ROSS L. HOLLENKAMP

(and/or individual instructors/staff members) <u>after first exhausting</u> all internal "administrative remedies" (i.e., COD's "Grade Grievance Process") as required.

75. On **<u>October 4, 2023</u>**, the Level 1 Grade Grievance meeting was finally held (in-person at COD), with only Ms. Hobbins, Ms. Seitz and Ms. Camargo attending.  Ms. Seitz and Ms. Camargo denied Ms. Hobbins' request to record the meeting, which refusal in itself amounts to a violation of Ms. Hobbins' legal right to reasonable accommodation as a D/HH student.  <u>The COD "Level 1 GG meeting" meeting was worthless to Ms. Hobbins in every regard, except that Ms. Hobbins specifically asked Ms. Seitz to confirm if she "was aware of [Ms. Hobbins] filing a harassment complaint against her" at the time of the May 19, 2023 "Final Clinical Evaluation" at issue and—remarkably—**Ms. Seitz outright lied**, replying "No".</u>

76. <u>This lie by Ms. Seitz amounts to another act of harassment against Ms. Hobbins, as well as ongoing retaliation, breach of contract, breach of fiduciary duty, and intentional infliction of emotional distress, as this **misrepresentation** gave both Ms. Seitz and Ms. Camargo "cover" to not have to change Ms. Hobbins' failing grade, despite it being clearly "the result of bad faith, fraud [and/or] incompetency"—which is the required showing to change a grade, per COD's internal "Grade Grievance Process".</u>  Ms. Seitz's *refusal to correct* Ms. Hobbins' failing grade on October 4, 2023 also amounts to a further <u>act of discrimination and harassment against Ms. Hobbins, as well as ongoing retaliation (in violation of the ADA and Section 504), breach of contract, breach of fiduciary duty, and intentional infliction of emotional distress.</u>

77. (Please note: at the COD there are specific harassment complaint compliance, policies and procedures.  All appropriate administrators and faculty—including, of course, Ms. Seitz [the instructor being accused of harassment!]—would be in the chain of communication, and <u>immediately notified</u> of the submission of this harassment claim on **<u>March 29, 2023</u>**—<u>almost **two full months before** Ms. Seitz failed Ms. Hobbins, in retaliation for filing said harassment claim on **May 19, 2023**</u>).

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

LAW OFFICE OF ROSS L. HOLLENKAMP

78.     Ms. Hobbins' undisputed **right** to *reasonable accommodations* as a D/HH student were violated on <u>**April 11, 2023**</u>, when Mr. Maldonado and Ms. Fry denied Ms. Hobbins' request to record the meeting (for future video playback and/or written transcription) when Ms. Hobbins requested being transferred to a new cohort away from Ms. Seitz harassment.

79.     The same disability rights under applicable law (i.e., the ADA and Section 504 of the Rehabilitation Act) were violated for the <u>**May 19, 2023**</u>, "N3A Final Clinical Evaluation" review, which was held in-person and without any opportunity provided to record the meeting for later video playback and/or written transcription.

80.     Said disability rights were also violated when Ms. Seitz and Ms. Camargo refused to allow Ms. Hobbins to record the <u>**October 4, 2023,**</u> Level 1 meeting for later video/audio playback and/or written transcription.  Ms. Camargo also breached her fiduciary duty owed to Ms. Hobbins (and committed intentional infliction of emotional distress, as well as breach of contract) by failing to conduct a reasonable investigation of Ms. Hobbins' grade grievance, including but not limited to, performing basic due diligence to confirm whether or not Ms. Seitz had, in fact, been aware of Ms. Hobbins' harassment complaint at the time that she failed Ms. Hobbins—this is a key, <u>easily-provable</u> fact that *should have* led to a finding by Ms. Camargo that the failing of Ms. Hobbins from the RN Program was *solely* the result of Ms. Seitz's bad faith and/or fraud and therefore Ms. Hobbins grade should have been changed by Mrs. Camargo at this Level 1 of COD's Grade Grievance Process.

81.     Attached hereto as **Exhibit "3"** is a true and correct copy of Ms. Camargo's October 4, 2023 email to Ms. Hobbins that confirmed the decision by Ms. Camargo and Ms. Seitz to **not** correct the failing grade at issue.

///

///

///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

82.     Accordingly, per COD's Grade Grievance Process guidelines, on **October 13, 2023** (after being granted a 2-day extension from the initial due date of October 11, 2023), Ms. Hobbins sent the formal request and paperwork necessary for the Level 2 Grade Grievance ("GG") meeting.

83.     On **October 19, 2023**, the Level 2 GG meeting took place via Zoom between Ms. Hobbins and **Gary Plunkett**, Dean of Health Sciences & Education. During this meeting, Dean Plunkett stayed calm as an administrator, confirming (without even flinching) that he was <u>indeed</u> "informed of the March 29, 2023, harassment complaint" <u>in real-time</u>, and that all complaints of any harassment, legal or disciplinary nature filed into their system are automatically (and immediately) sent to him.  Mr. Plunkett tried to keep the discussion "limited" to the grade grievance itself *without at all* addressing the harassment complaint information and its obvious impact on the actions of Ms. Seitz and Ms. Fry in failing Ms. Hobbins by way of retaliation.

84.     For more context and emphasis: please note that on May 23, 2023, Ms. Hobbins sent an email to COD's Nursing Program Counselor, Dr. Stockwell.  <u>Dr. Stockwell stated to Ms. Hobbins in her email response that she could not understand how Ms. Hobbins was failed, despite having earned a 78% and 85.25% in Theory and Clinical, respectively</u>.  As Dr. Stockwell thus confirmed in written email correspondences with Ms. Hobbins, her passing grades in both Theory and Clinical should have earned her successful completion of N3A and advancement to N4 (i.e., the fourth and final semester of COD's Nursing Program).

85.     On **October 23, 2023**, Dean Plunkett issued his Level 2 GG ruling via email (with Mr. Maldonado, **Val Martinez-Garcia** [Vice President of Instruction] and related Administrators copied on the email), confirming that the Dean "did not find evidence to support your claims of Fraud, Bad Faith, and Incompetency on behalf of [Ms. Hobbins'] N003A clinical instructor [Ms. Seitz].  Therefore, your grade of 'F/Does Not Meet' still stands."  Attached hereto as **Exhibit "4"** is a true and correct copy of Mr. Plunkett's October 23, 2023 email to Ms. Hobbins.

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

86.     After receiving Dean Plunkett's Level 2 GG decision, Ms. Hobbins promptly filed, on **October 30, 2023**, her request and supporting paperwork to move the GG process to the final level, "Level 3", by meeting with Mr. Martinez-Garcia. Attorney Ross L. Hollenkamp of the Law Office of Ross L. Hollenkamp became involved as Ms. Hobbins' counsel and sent COD notice of representation and that all communications be sent to and through him in these matters.  However, shockingly, Mr. Hollenkamp was denied the role of "personal representative" for Ms. Hobbins by COD, even though COD eventually relented in allowing the Zoom meeting to be recorded per Mr. Hollenkamp's request (and as legally required as a reasonable accommodation).

87.     However, Mr. Martinez-Garcia failed to conduct this Level 3 GG meeting within five (5) school days of Ms. Hobbins' October 30, 2023, request, as expressly required by COD's own procedures.  Rather, Mr. Martinez-Garcia (and yet-to-be determined members of the COD administration, staff and/or faculty) intentionally dragged out this process until the meeting was finally held on **December 8, 2023— over a full month late**—to further harass and discriminate/retaliate against Ms. Hobbins and to inflict further emotional distress on Ms. Hobbins.

88.     During this **December 8, 2023,** Level 3 GG meeting, Mr. Martinez-Garcia had little to nothing to say and tried to avoid any discussion of the subject of harassment and reprisals, while also making it obvious that he had not reviewed any of Ms. Hobbins' paperwork submitted to him by Ms. Hobbins.  Ms. Hobbins continued to argue that her completely unfounded failing grade was the direct result of fraud, bad faith, and incompetency by the clinical instructor.

89.     Unfortunately, on **December 14, 2023**, Mr. Martinez-Garcia confirmed via email that he would <u>not</u> reverse the failing grade that Ms. Hobbins received from Ms. Seitz, thereby concluding the COD's internal "Grade Grievance Process." Attached hereto as **Exhibit "5"** is a true and correct copy of Mr. Martinez-Garcia's December 14, 2023 email to Ms. Hobbins.

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

# FIRST CAUSE OF ACTION

## Violations of Title II of the Americans with Disabilities Act

## [42 U.S.C. § 12131 *et seq.*]

## (By Plaintiff Against Defendant DCCD)

90.     Plaintiff incorporates in this cause of action the allegations of each preceding paragraph of this complaint as though set forth herein in full.

91.     The Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, guarantees equal access for qualified individuals to the benefits of the services, programs, or activities of a public entity.  42 U.S.C. § 12132 *et seq.*

92.     At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12132 *et seq.*, has been in full force and effect and has applied to Defendants' conduct.

93.     At all times relevant to this action, Ms. Hobbins has been substantially limited in the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of Title II of the ADA.

94.     DCCD, as a state-chartered and directed community college district, is a public entity under Title II of the ADA.

95.     Classes and facilities at DCCD campuses—including College of the Desert—are services, programs, or activities provided by DCCD.

96.     Ms. Hobbins was admitted to College of the Desert based on all general requirements to be students at College of the Desert/DCCD and thus are qualified individuals entitled to the protections of the ADA.

97.     Title II of the ADA mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

///

///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

98.     Furthermore, such public entities "shall furnish appropriate auxiliary aids and services when necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

99.     DCCD has failed and is failing to meet its obligations to provide deaf/hard-of-hearing students with educational opportunities that are equal to those provided to students without disabilities.  DCCD has excluded and continues to exclude deaf/hard-of-hearing students, including Ms. Hobbins, from participation in, denied them the benefits of, and/or otherwise discriminated against them in its facilities, services, programs, and/or activities.

100.    DCCD's actions constitute intentional discrimination on the basis of a disability in violation of the ADA, in that DCCD: (1) has failed to maintain policies and procedures to ensure compliance with Title II, specifically policies that provide equal access and effective communication to individuals with disabilities; (2) has failed to ensure that communications with deaf/hard-of-hearing students, specifically Ms. Hobbins, are as effective as communications with non-disabled peers; (3) has failed to provide auxiliary aids and services or to modify policies and procedures to prevent discrimination; (4) has failed to provide reasonable modifications of policies, practices, and procedures; (5) has failed to provide educational opportunities and educational information in a manner that is timely, equally effective, and equally integrated; and (6) has otherwise discriminated against deaf/hard-of-hearing students, including Ms. Hobbins.

101.    As a result of DCCD's actions, Ms. Hobbins has suffered and continues to suffer irreparable harm.  Ms. Hobbins has suffered and continues to suffer from discrimination and unequal access to DCCD's programs and activities, in that she was unjustifiably "flunked out" of the College of the Desert's Nursing Program and will not be able to graduate from the College of the Desert's Nursing Program, nor be able

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

to successfully enroll in a comparable nursing program at another school, nor be able to enter the nursing job market at all—all of which things Ms. Hobbins would have been able to accomplish had she been given an equal opportunity.  Ms. Hobbins's grades at the College of the Desert's Nursing Program do not accurately reflect her knowledge and skills, and Ms. Hobbins has been and continues to be denied full access to the knowledge intended to be communicated in her classes at the College of the Desert's Nursing Program.

102.   The actions by DCCD were done intentionally or with deliberate indifference to the protected rights of deaf/hard-of-hearing students, including Ms. Hobbins.

103.   DCCD's failure to meet its obligations to provide deaf/hard-of-hearing students with educational opportunities equal to those provided to students without disabilities constitutes an ongoing and continuous violation of the ADA and its supporting regulations.  Unless restrained from doing so, DCCD will continue to violate the ADA.  Unless enjoined, DCCD's conduct will continue to inflict injuries for which plaintiff and those similarly situated have no adequate remedy at law.

104.   Unless the requested relief is granted, Ms. Hobbins and other deaf/hard-of-hearing students will continue to be discriminated against and denied equal access to the educational opportunities, facilities, services, programs, or activities of DCCD, and will be unlawfully burdened in their pursuit of higher education.

105.   The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities.  42 U.S.C. § 12188(a)(1).

106.   Ms. Hobbins is entitled to injunctive relief, as well as compensatory damages and reasonable attorney's fees and costs.

///

///

///

///

31

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

## **SECOND CAUSE OF ACTION**

### **Violations of Section 504 of the Rehabilitation Act of 1973**

### **[29 U.S.C. § 794 *et seq*.]**

### **(By Plaintiff Against Defendant DCCD)**

107.   Plaintiff incorporates in this cause of action the allegations of each preceding paragraph of this complaint as though set forth herein in full.

108.   At all times relevant to this action, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. ("Section 504"), has been in full force and effect and has applied to Defendants' conduct.

109.   At all times relevant to this action, Ms. Hobbins has been substantially limited in the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 705(9).

110.   At all times relevant to this action, defendant DCCD has been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

111.   Classes and facilities at DCCD campuses—including College of the Desert—are services, programs, or activities provided by DCCD.

112.   Ms. Hobbins was admitted to College of the Desert based on all general requirements to be students at College of the Desert/DCCD and thus is a qualified individual with a disability under Section 504.

113.   Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability […] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

114.   Section 504 defines "program or activity," in pertinent part, as "a college, university, or other postsecondary institution or a public system of higher education […]."  29 U.S.C. § 794(b)(2)(A).

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

115.   Such federally funded programs and activities must provide aids and services that "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."  45 C.F.R. § 84.4(b)(2).

116.   DCCD has, solely by reason of their disabilities, excluded deaf/hard-of-hearing students, including Ms. Hobbins, from participation in, denied them the benefits of, and otherwise discriminated against them in its facilities, services, programs, or activities.  DCCD's violation of Section 504 and its regulations has denied and continues to deny deaf/hard-of-hearing students, including Ms. Hobbins, an equal opportunity to access the educational benefits that DCCD offers as a public community college district.

117.   DCCD's actions constitute intentional discrimination on the basis of a disability in violation of Section 504, in that DCCD: (1) has failed to maintain policies and procedures to ensure compliance with Section 504, specifically policies that provide equal access and effective communication to individuals with disabilities; (2) has failed to ensure that communications with deaf/hard-of-hearing students, specifically Ms. Hobbins, are as effective as communications with non-disabled students; (3) has failed to provide auxiliary aids and services or to modify policies and procedures to prevent discrimination; (4) has failed to provide reasonable modifications of policies, practices, and procedures; (5) has failed to provide educational opportunities and educational information in a manner that is timely, equally effective, and equally integrated; and (6) has otherwise discriminated against deaf/hard-of-hearing students, including Ms. Hobbins.

118.   As a result of DCCD's actions, Ms. Hobbins has suffered and continues to suffer irreparable harm.  Ms. Hobbins has suffered and continues to suffer from discrimination and unequal access to DCCD's programs and activities, in that she was unjustifiably "flunked out" of the College of the Desert's Nursing Program and will not be able to graduate from the College of the Desert's Nursing Program, nor be able

33

LAW OFFICE OF ROSS L. HOLLENKAMP

LAW OFFICE OF ROSS L. HOLLENKAMP

to successfully enroll in a comparable nursing program at another school, nor be able to enter the nursing job market at all—all of which things Ms. Hobbins would have been able to accomplish had she been given an equal opportunity.  Ms. Hobbins's grades at the College of the Desert's Nursing Program do not accurately reflect her knowledge and skills, and Ms. Hobbins has been and continues to be denied full access to the knowledge intended to be communicated in her classes at the College of the Desert's Nursing Program.

119.   The actions by DCCD were done intentionally or with deliberate indifference to the protected rights of deaf/hard-of-hearing students, including Ms. Hobbins.

120.   By failing to meet its obligations to provide deaf/hard-of-hearing students with educational opportunities that are equal to those provided to students without disabilities, DCCD is subjecting Ms. Hobbins and other deaf/hard-of-hearing students to discrimination and/or excluding them from participation in and denying them the benefit of the educational opportunities, facilities, services, programs, and/or activities offered by DCCD.

121.   The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities.  42 U.S.C. § 12188(a)(1).

122.   Ms. Hobbins is entitled to injunctive relief, as well as compensatory damages and reasonable attorney's fees and costs.

///
///
///
///
///
///
///
///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L A W   O F F I C E   O F   R O S S   L .   H O L L E N K A M P

### <u>THIRD CAUSE OF ACTION</u>

**Violations of the Unruh Civil Rights Act**

**[California *Civil Code* § 51 *et seq*.]**

**(By Plaintiff Against Defendant DCCD)**

123.   Plaintiff incorporates in this cause of action the allegations of each preceding paragraph of this complaint as though set forth herein in full.

124.   The Unruh Act provides that: "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  California *Civil Code* § 51(b).

125.   The Unruh Act further provides that: "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."  Cal. *Civil Code* § 51(f).

126.   Defendant DCCD violated the Unruh Act by discriminating against Ms. Hobbins on the basis of her disability as a deaf/hard-of-hearing individual, and also by violating Ms. Hobbins' rights under the ADA.

127.   DCCD has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Unruh Act.

128.   Ms. Hobbins is therefore entitled to injunctive relief, as well as compensatory damages and reasonable attorney's fees and costs, pursuant to Cal. *Civil Code* § 52.

129.   Ms. Hobbins is further entitled to seek and recover exemplary damages to rectify and deter defendant DCCD's discriminatory conduct as herein alleged, pursuant to Cal. *Civil Code* § 52.

///

///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

# FOURTH CAUSE OF ACTION

## Violations of the California Disabled Persons Act

### [California *Civil Code* § 54.1 *et seq*.]

### (By Plaintiff Against Defendant DCCD)

130.   Plaintiff incorporates in this cause of action the allegations of each preceding paragraph of this complaint as though set forth herein in full.

131.   The California Disabled Persons Act provides that: "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, […] and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Cal. *Civil Code* § 54.1(a)(1).

132.   The California Disabled Persons Act further provides that: "[a] violation of the right of an individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) also constitutes a violation of this section, and nothing in this section shall be construed to limit the access of any person in violation of that act."  Cal. *Civil Code* § 54.1(d).

133.   Defendant DCCD violated the California Disabled Persons Act by discriminating against Ms. Hobbins on the basis of her disability as a deaf/hard-of-hearing individual, and also by violating Ms. Hobbins' rights under the ADA.

134.   DCCD has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the California Disabled Persons Act.

135.   Ms. Hobbins is therefore entitled to injunctive relief, as well as compensatory damages and reasonable attorney's fees and costs, pursuant to Cal. *Civil Code* § 54.3.

136.   Ms. Hobbins is further entitled to seek and recover exemplary damages to rectify and deter defendant DCCD's discriminatory conduct as herein alleged, pursuant to Cal. *Civil Code* § 52.

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

LAW OFFICE OF ROSS L. HOLLENKAMP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF ROSS L. HOLLENKAMP

# FIFTH CAUSE OF ACTION

## Intentional Infliction of Emotional Distress

## (By Plaintiff Against Defendants DCCD, SARAH FRY, DOROTHY SEITZ, CARLOS MALDONADO, MONICA CAMARGO and DOES 1 through 50)

137.  Plaintiff incorporates in this cause of action the allegations of each preceding paragraph of this complaint as though set forth herein in full.

138.  Defendants' discriminatory, harassing, and retaliatory actions against Ms. Hobbins constituted severe and outrageous misconduct and caused plaintiff extreme emotional distress.

139.  Defendants were aware that treating Ms. Hobbins in the manner alleged above—including unjustifiably "flunking out" Ms. Hobbins from the College of the Desert's Nursing Program and thereby effectively depriving Ms. Hobbins of her future livelihood as a nurse, in retaliation for Ms. Hobbins filing a harassment complaint against Ms. Seitz—would devastate Ms. Hobbins and cause her extreme hardship.

140.  As a proximate result of Defendants' extreme and outrageous conduct, Ms. Hobbins has suffered and continues to suffer severe emotional distress.  Ms. Hobbins has sustained and continues to sustain substantial losses of earnings, loss of earning capacity, and other career advancement and employment benefits as a result of being emotionally distressed.

141.  As a proximate result of Defendants' extreme and outrageous conduct, Ms. Hobbins has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

142.  Defendants' conduct as alleged herein constitutes oppression, fraud, and/or malice under California *Civil Code* § 3294 and thus entitles Ms. Hobbins to an award of exemplary and/or punitive damages.

///

///

///

*a.   Malice:*      Defendants' conduct as alleged herein was committed with malice within the meaning of California *Civil Code* § 3294, including that: (a) Defendants acted with intent to cause injury to Ms. Hobbins and/or acted with reckless disregard for Ms. Hobbins' injury, including by unjustifiably "flunking out" Ms. Hobbins from the College of the Desert's Nursing Program and/or taking other adverse actions against Ms. Hobbins because of her disability as a deaf/hard-of-hearing student and/or good faith complaints; and/or (b) Defendants' conduct was despicable and committed in willful and conscious disregard of Ms. Hobbins' rights, health and safety, including Ms. Hobbins' right to be free of discrimination, harassment, retaliation, and wrongful termination from the College of the Desert's Nursing Program.

*b.   Oppression:*      In addition, and/or alternatively, Defendants' conduct as alleged herein was committed with oppression within the meaning of California *Civil Code* § 3294, including that Defendants' actions against Ms. Hobbins because of her disability and/or good faith complaints were "despicable" and subjected Ms. Hobbins to cruel and unjust hardship, in knowing disregard of Ms. Hobbins' rights to a higher education free of discrimination, harassment, retaliation and wrongful termination from enrollment in said higher education.

*c.   Fraud:*      In addition, and/or alternatively, Defendants' conduct was committed with oppression within the meaning of California *Civil Code* § 3294, including that Defendants asserted false (pretextual) grounds for terminating Ms. Hobbins from the College of the Desert's Nursing Program and/or other adverse actions vis-à-vis Ms. Hobbins, thereby causing Ms. Hobbins severe hardship and depriving her of legal rights.

///

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L A W   O F F I C E   O F   R O S S   L .   H O L L E N K A M P

## SIXTH CAUSE OF ACTION

### Breach of Contract

### (By Plaintiff Against Defendants DCCD, SARAH FRY, DOROTHY SEITZ, CARLOS MALDONADO, MONICA CAMARGO and DOES 1 through 50)

143.   Plaintiff incorporates in this cause of action the allegations of each preceding paragraph of this complaint as though set forth herein in full.

144.   Plaintiff is informed and believes, and on that basis alleges, as follows:

a.   Defendant DCCD, on the one hand, and defendants Ms. Fry, Ms. Seitz, Mr. Maldonado and Ms. Camargo, on the other hand, entered into a written contract whereby said Defendants mutually agreed to comply with all of DCCD's internal rules and regulations, including but not limited to DCCD's "Administrative Procedure 3435 – Complaint: Discrimination and Harassment Investigation", which provides, in part, as follows:

> "**Retaliation**[:] It is unlawful for anyone to retaliate against any person who files a complaint alleging sexual harassment or other unlawful forms of harassment or discrimination, who refers such a matter for investigation or complaint, who participates in an investigation of a complaint, who represents or serves as an advocate for an alleged victim or alleged offender, or who otherwise furthers the principles of this unlawful discrimination policy.  Therefore, the District shall take all reasonable steps to protect the complainant from further harassment, and/or discrimination, and to protect the complainant and witnesses from retaliation as a result of communicating the complaint and/or assisting in the investigation."  (Emphasis in the original.)

///

///

///

///

39

1

2

3

4

5

6

7

8

9

10

LAW OFFICE OF ROSS L. HOLLENKAMP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      b.     Defendants breached this agreement by (following Ms. Hobbins' March 29, 2023 submission of her complaint of harassment and discrimination against Ms. Seitz): (i) engaging in discriminatory, harassing, and retaliatory actions against Ms. Hobbins; and/or (ii) failing to take reasonable steps to protect Ms. Hobbins from further harassment and/or discrimination, and to protect Ms. Hobbins from retaliation as a result of communicating her March 29, 2023 complaint against Ms. Seitz.

145.   At all relevant times, Ms. Hobbins belonged to the class of persons for whose benefit the aforesaid contract was made, to wit: DCCD students and/or employees who file a complaint alleging any unlawful form of discrimination and/or harassment. As such, Ms. Hobbins is an "intended beneficiary" of this contract.

146.   As a proximate result of Defendants' breaches of the above contract, Ms. Hobbins has suffered and continues to suffer irreparable harm. Ms. Hobbins has suffered and continues to suffer from retaliation and further discrimination and harassment in that she was unjustifiably "flunked out" of the College of the Desert's Nursing Program and will not be able to graduate from the College of the Desert's Nursing Program, nor be able to successfully enroll in a comparable nursing program at another school, nor be able to enter the nursing job market at all—all of which things Ms. Hobbins would have been able to accomplish had Defendants not: (i) engaged in retaliation against Ms. Hobbins and/or: (ii) failed to take reasonable steps to protect Ms. Hobbins from further harassment, and/or discrimination, and to protect her from retaliation as a result of communicating her March 29, 2023 complaint against Ms. Seitz. As a result, Ms. Hobbins's grades at the College of the Desert's Nursing Program do not accurately reflect her knowledge and skills, and Ms. Hobbins has been and continues to be denied full access to the knowledge intended to be communicated in her classes at the College of the Desert's Nursing Program.

///

///

///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF ROSS L. HOLLENKAMP

## SEVENTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (By Plaintiff Against Defendants DCCD, SARAH FRY, DOROTHY SEITZ, CARLOS MALDONADO, MONICA CAMARGO and DOES 1 through 50)

147.   Plaintiff incorporates in this cause of action the allegations of each preceding paragraph of this complaint as though set forth herein in full.

148.   Defendants DCCD (as a public educational entity organized and existing pursuant to the laws of the State of California, California *Education Code* § 70900, *et seq*.) and individual defendants Ms. Fry, Ms. Seitz, Mr. Maldonado and Ms. Camargo (as faculty members and/or administrators of College of the Desert) each have a fiduciary duty to all DCDD students (including, but not limited to, plaintiff Ms. Hobbins) to comply with and enforce all of DCDD's internal rules and regulations, including but not limited to DCCD's "Administrative Procedure 3435 – Complaint: Discrimination and Harassment Investigation", as well as other applicable laws, rules and regulations.

149.   Defendants breached their respective fiduciary duties owed to Ms. Hobbins by, among other things, (following Ms. Hobbins' March 29, 2023 submission of her complaint of harassment and discrimination against Ms. Seitz): (i) engaging in discriminatory, harassing, and retaliatory actions against Ms. Hobbins; and/or (ii) failing to take reasonable steps to protect Ms. Hobbins from further harassment and/or discrimination, and to protect Ms. Hobbins from retaliation as a result of communicating her March 29, 2023 complaint against Ms. Seitz.

///

///

///

///

///

///

41

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

150.   As a proximate result of Defendants' collective and respective breaches of fiduciary duty, Ms. Hobbins has suffered and continues to suffer irreparable harm. Ms. Hobbins has suffered and continues to suffer from retaliation and further discrimination and harassment in that she was unjustifiably "flunked out" of the College of the Desert's Nursing Program and will not be able to graduate from the College of the Desert's Nursing Program, nor be able to successfully enroll in a comparable nursing program at another school, nor be able to enter the nursing job market at all—all of which things Ms. Hobbins would have been able to accomplish had Defendants not: (i) engaged in retaliation against Ms. Hobbins and/or: (ii) failed to take reasonable steps to protect Ms. Hobbins from further harassment, and/or discrimination, and to protect her from retaliation as a result of communicating her March 29, 2023 complaint against Ms. Seitz.  As a result, Ms. Hobbins's grades at the College of the Desert's Nursing Program do not accurately reflect her knowledge and skills, and Ms. Hobbins has been and continues to be denied full access to the knowledge intended to be communicated in her classes at the College of the Desert's Nursing Program.

///

///

///

///

///

///

///

///

///

///

///

///

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

LAW OFFICE OF ROSS L. HOLLENKAMP

1

**PRAYER FOR RELIEF**

2          WHEREFORE, plaintiff **ASHLEY-ANNE HOBBINS ("Plaintiff")** prays for

3     judgment against defendants **DESERT COMMUNITY COLLEGE DISTRICT**

4     **("DCCD"), SARAH FRY ("Ms. Fry"), DOROTY SEITZ ("Ms. Seitz"),**

5     **CARLOS MALDONADO ("Dean Maldonado" and/or "Mr. Maldonado"),**

6     **MONICA CAMARGO ("Ms. Camargo")** and **DOES 1 THROUGH 50**

7     **(collectively "Defendants")** as follows:

8          1.      A permanent injunction (a) prohibiting Defendants from violating Title II

9     of the ADA, Section 504, the Unruh Act and the California Disabled Persons Act vis-

10    à-vis Plaintiff; and (b) requiring Defendants to immediately and fully comply with

11    Title II of the ADA, Section 504, the Unruh Act and the California Disabled Persons

12    Act vis-à-vis Plaintiff by, among other things, correcting Plaintiff's grade for the N3A

13    Semester at the College of the Desert's Nursing Program—from a "fail" / "does not

14    meet" grade that Plaintiff actually received, to the correct grade of "pass" / "meets"

15    that Plaintiff should have received—and allowing Plaintiff to re-enroll and/or transfer

16    to another Nursing Program provided by DCCD at a campus other than College of the

17    Desert;

18         2.      A declaration that Defendants have violated, and continue to violate,

19    Title II of the ADA, Section 504, the Unruh Act and the California Disabled Persons

20    Act;

21         3.      An award to Plaintiff of her compensatory damages, pursuant to the

22    ADA, Section 504, as well as pursuant to either the Unruh Act or the California

23    Disabled Persons Act;

24         4.      An award to Plaintiff of exemplary damages, pursuant to the Unruh Act

25    and California *Civil Code* § 3294;

26         5.      An award to Plaintiff of her reasonable costs and attorneys' fees,

27    pursuant to the ADA, Section 504, the Unruh Act, and the California Disabled

28    Persons Act;

43

6.     An award to Plaintiff for interest on all her damages at the highest rates and from the earliest dates that are allowed by law; and

7.     For such other and further relief as the Court may deem just and proper.

DATED:  March 29, 2024                LAW OFFICE OF ROSS L. HOLLENKAMP

By: _____

ROSS L. HOLLENKAMP
Attorneys for Plaintiff,
ASHLEY-ANNE HOBBINS

*Hobbins v. Desert Community College District et al.*: Complaint, Jury Trial Demand

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff ASHLEY-ANNE HOBBINS hereby demands a jury trial on all issues so triable in this Complaint.

DATED:  March 29, 2024          LAW OFFICE OF ROSS L. HOLLENKAMP

By
ROSS L. HOLLENKAMP
Attorneys for Plaintiff,
ASHLEY-ANNE HOBBINS

*Hobbins v. Desert Community College District et al.:*
Complaint; Demand For Jury Trial